UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD MOORE,

                                Plaintiff,

v.                                                              9:19-CV-0624
                                                                (GTS/ML)
ROCCO MANSUETO, Correction Officer; JOHN
DOE #1, Correction Officer on 6/8/2016 at 11:20
a.m. in front of Mess Hall #2 at Eastern Corr.
Facility; JOHN DOE #2, Correction Officer on
6/8/2016 at 11:20 a.m. in front of Mess Hall #2 at
Eastern Corr. Facility; and JOHN DOE #3,
Correction Officer on 6/8/2016 at 11:20 a.m. in
front of Mess Hall #2 at Eastern Corr. Facility,

                                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

TRACIE A. SUNDACK & ASSOC., LLC             TRACIE A. SUNDACK, ESQ.
Counsel for Plaintiff                                 JEFFREY ROBERT POLLACK, ESQ.
19 Court Street, Third Floor
White Plains, NY 10601

HON. LETITIA JAMES                                   JOHN F. MOORE, ESQ.
Attorney General for the State of New York            Assistant Attorney General
Counsel for Defendant Mansueto
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Richard Moore ("Plaintiff")

against Rocco Mansueto and three unidentified John Doe corrections officers ("Defendants"), is

Defendant Mansueto's motion for summary judgment.  (Dkt. No. 39.)  For the reasons set forth

below, Defendant Mansueto's motion is denied.

I.        RELEVANT BACKGROUND

A.      **Plaintiff's Amended Complaint**

Generally, in his Amended Complaint, Plaintiff asserts two claims: (1) a claim that Defendant Mansueto used excessive force against him by punching him in his ribs and causing physical injury; and (2) a claim that the three John Doe Defendants failed to intervene to stop the assault. (Dkt. No. 6 [Am. Compl.].) In support of these claims, Plaintiff alleges that Defendants stopped him in a hallway because of physical contact Plaintiff had made with a nurse earlier in the day, and Defendant Mansueto had him empty his pockets, take off his belt, and put his hands against the wall; Plaintiff complied, at which point Defendant Mansueto threatened to knock his teeth out, told him to never touch any of the nurses again, and punched Plaintiff six-to-eight times in his ribs, which resulted in a fractured rib, physical pain, and emotional distress, among other injuries. (*Id.*) Plaintiff also alleges that the John Doe Defendants, who were present in the hallway, had a reasonable opportunity to intervene in the assault, two of them being positioned next to Plaintiff and one being positioned further down the hallway at the time, but that none of them intervened to stop the assault. (*Id.*)

B.      **Undisputed Material Facts on Defendant Mansueto's Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant Mansueto in his Statement of Material Facts and admitted by Plaintiff.[1] (*Compare* Dkt. No. 35, Attach. 8 [Def. Mansueto's Rule 56.1 Statement] *with* Dkt. No. 36, Attach. 2 [Pl.'s Rule 56.1 Resp.].)

1.      On or about June 8, 2016, Plaintiff, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), was confined at Eastern Correctional Facility ("Eastern C.F.").

---

[1]      The Court notes that Plaintiff expressly admitted every fact asserted by Defendant Mansueto in his Statement of Material Facts. (Dkt. No. 36, Attach. 2 [Pl.'s Rule 56.1 Resp.].)

**Grievance Procedure at Eastern C.F.**

2.      Plaintiff entered Eastern C.F. in 2015.

3.      There is a grievance procedure available to inmates at Eastern C.F.

4.      DOCCS' policies and procedures regarding the Inmate Grievance Program are set

forth in Part 701of Title 7 of the Official Compilation of Codes, Rules, and Regulations of the

State of New York, which are mirrored with minor refinements in DOCCS' Policy and

Procedure Manual at Directive #4040.

5.      Plaintiff was aware of the grievance procedure at Eastern C.F. on June 8, 2016,

the date of the alleged incident giving rise to this action.

6.      The written policies and procedures concerning the Inmate Grievance Program

are widely distributed and readily accessible to inmates.

7.      NYCRR Title 7 is available in the law library at every DOCCS correctional

facility, and Directive #4040 is also distributed to every facility and is available in every facility

law library and grievance office.

8.      All new inmates are seen at orientation when they first arrive at Eastern C.F. and

the grievance process is explained to them.

9.      Plaintiff became aware of the inmate grievance procedure during his orientation.

10.     The DOCCS inmate grievance process allows any inmate who is personally

affected by an issue to submit his or her grievance complaint to the Inmate Grievance Resolution

Committee ("IGRC"), a facility committee comprised of elected inmate representatives and

appointed staff members, or, directly to the superintendent of the correctional facility in the case

of a grievance involving staff conduct issues.

11.     Plaintiff understood that, when an inmate files a grievance, he receives a grievance number and a notice that the grievance was filed.

12.     Plaintiff understood that different kinds of grievances have different recipients.

13.     The standard Inmate Grievance Program ("IGP") established by 7 NYCRR § 701.5 involves three steps: (1) a complaint to the IGRC at the individual facility; (2) an appeal to the superintendent of the facility; and (3) an appeal to the Central Office Review Committee ("CORC").

14.     If an inmate wishes to appeal the superintendent's decision, he must submit an appeal to CORC within seven calendar days after receipt of the superintendent's written response.

15.     CORC is the final appellate level of the IGP.

16.     DOCCS also provides an expedited procedure for the review of grievances alleging harassment or misconduct by DOCCS employees.

17.     A grievance alleging harassment or misconduct by a DOCCS employee will be directly forwarded to the superintendent upon filing, who then has 25 calendar days to render a response.

18.     While the expedited procedure for grievances alleging harassment or misconduct by DOCCS employees allows for direct forwarding of such a grievance to the superintendent, an incarcerated individual must still initiate the grievance process by filing a grievance in accordance with Section 701.5.

19.     In the case of a grievance alleging harassment or misconduct by DOCCS employees, if the incarcerated individual disagrees with the superintendent's response, her or she must still appeal the decision to CORC to exhaust his or her administrative remedies.

20.     Further, if the incarcerated individual fails to receive a response to an expedited grievance from the superintendent within the specified time period, the failure to respond may be construed as a denial, and the incarcerated individual must still appeal to CORC to exhaust his or her administrative remedies.

21.     Plaintiff believed (but was not sure) that, when an inmate files a grievance, he or she is supposed to receive a decision on that grievance.[2]

22.     Plaintiff was aware that, if he was not satisfied with the outcome of a grievance decision, his recourse was to appeal that decision.

**Plaintiff's Grievance No. 26884-16**

23.     On June 21, 2016, Plaintiff filed Grievance No. 26884-16 regarding an alleged assault that he claims took place on June 8, 2016.

24.     On June 21, 2016, the Eastern C.F. IGP received Plaintiff's grievance.

25.     Grievance No. 26884-16 indicated that Plaintiff was "grieving CO Cardaton and CO Mansueto the other CO's I don't know the name," and included two pages of handwritten complaints of an incident allegedly occurring on June 8, 2016.

26.     Upon receipt of Grievance No. 26884-16 by the Eastern C.F. IGP, Plaintiff was provided with an "IGRC Office Acknowledgment Receipt" form, which states, in relevant part, the following:

> Upon completion of an investigation and if not resolved you will be scheduled for an IGRC hearing within 16 calendar days of the filing date.  According to Directive #4040 if you do not appear for 3 scheduled hearings without legitimate reason, the IGRC can hold a hearing in absentia.  When a grievant is keep locked over thirty (30) days a hearing can be held in absentia.

---

[2]     Although Defendant Mansueto asserted in this paragraph that Plaintiff "understood" this fact, the record evidence cited in support of the assertion supports merely a finding that Plaintiff "believe[d]" but was "not sure" of the fact.  (*See* Dkt. No. 35, Attach. 2, at 17-18 [Plf.'s Depo. Tr., testifying "I believe so. . . .  I'm not sure, but I believe so"].)

If your grievance is part of a consolidated issue, you will have the option of attending the hearing or selecting a representative from the group.  However, you will receive a copy of the grievance committee's decision, and you may appeal any decision in accordance with Directive #4040.

Grievances coded 25.1, 25.2, or 49 are passed directly through to the Superintendent for action.  An investigation will be conducted and the Superintendent should respond within 25 days of the filing date.  No IGRC hearing will be held.

If a response is considered untimely then the IGRC Office may contact you to ask for an extension or you can request in writing that it be appealed to the next level.

27.     Plaintiff received the IGRC Office Acknowledgment Receipt form.

28.     Grievance No. 26884-16 was designated and processed as Code 49, which indicates that, in the case of staff conduct issues, the grievance will proceed directly to the Superintendent.

29.     On or about July 7, 2016, Superintendent William A. Lee issued a decision on Plaintiff's Grievance No. 26884-16, which reads as follows:

Grievant alleges CO C…..threatened him and CO M…..assaulted and threatened him while other CO's stood by and watched.

Allegations referenced in grievance are under review by the Department Office of Special Investigations.

Action requested is granted only to the extent noted above.

30.      Plaintiff received this decision on or about July 7, 2016.

31.     At the bottom of the Superintendent's decision is the following form appeal statement:

If you wish to refer the above decision of the Superintendent please sign and date below and return this copy your Inmate Grievance Clerk to the IGRC Office.  You have seven (7) calendar days from receipt of this notice to file your appeal.  Please state why you are appealing this decision to C.O.R.C.

32.     Records indicate that Plaintiff did not appeal the Superintendent's decision.

33.     Plaintiff admits that he does not recall filing an appeal to the Superintendent's decision.

34.     Under Directive #4040 (Section 701.5[d][1][i]), if an inmate grievant wishes to appeal to CORC, he must complete and sign Form #2133 within seven days after the Superintendent's written response to the grievance.

35.     While an exception to this appeal time may be approved by the IGP supervisor under Section 701.6(g), the IGP supervisor for Eastern C.F. received no such request from Plaintiff.

36.     Plaintiff admits that he did not request an extension to file an appeal.

**C.     Parties' Briefing on Defendant Mansueto's Motion for Summary Judgment**

**1.     Defendant Mansueto's Memorandum of Law**

Generally, in his motion for summary judgment, Defendant Mansueto argues that he is entitled to a judgment as a matter of law on Plaintiff's claims against him because Plaintiff failed to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing this action.  (Dkt. No. 35, at 6-11 [Def. Mansueto's Mem. of Law].)  More specifically, Defendant Mansueto argues that, although Plaintiff filed a grievance related to the underlying incident that was forwarded to the Superintendent pursuant to DOCCS' expedited procedure, Plaintiff did not appeal the Superintendent's decision to CORC or request an extension of time in which to appeal the decision to CORC, and thus he has not exhausted his administrative remedies as required.  (*Id.*)  Defendant Mansueto further argues that an incarcerated individual must file such an appeal if he disagrees with the Superintendent's

response or if the Superintendent fails to provide a required response within the specified time period. (*Id.*)

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in his opposition Plaintiff argues that he did not need to file an appeal to CORC in this instance in order to exhaust his administrative remedies because Superintendent Lee granted Plaintiff all of the relief available to the Superintendent to grant. (Dkt. No. 36, at 4-9 [Pl.'s Opp'n Mem. of Law].) More specifically, Plaintiff argues that, pursuant to Section 701.8 of the governing regulations, once the Superintendent receives Plaintiff's grievance, he must (1) promptly determine whether the grievance if true would represent a bona fide case of harassment and then (2) if the Superintendent answers that question in the affirmative he must do one of only three things (initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance, request an investigation by the Inspector General's office, or request an investigation by the New York State Police if he determines that criminal activity may be involved). (*Id.*) Here, argues Plaintiff, Superintendent Lee, after implicitly but obviously answering the question in the affirmative by advising Plaintiff that his allegations were "under review by the Department Office of Special Investigations" and that thus the "[a]ction requested is granted" to that extent. (*Id.*) Because Plaintiff had received favorable relief, he argues, there was nothing for him to appeal. (*Id.*) Finally, Plaintiff argues that any idea that a grievant may (and therefore must in order to satisfy the exhaustion requirement) appeal to CORC after the conclusion of an investigation is undermined by the fact that "[t]here is no time limit set or suggested [within Section 701.8] for how long a grievant would be required to wait for an investigation as described above to be concluded." (*Id.*)

Plaintiff notes that, here, the Office of Special Investigations did not issue its Final Investigative Report until February 12, 2017. (*Id.*)

### 3.  Defendant Mansueto's Reply Memorandum of Law

Generally, in his reply, Defendant Mansueto argues that Plaintiff has failed to raise a sufficient question of fact to survive summary judgment for two reasons. (Dkt. No. 40, at 5-10 [Def. Mansueto's Reply Mem. of Law].) First, Defendant Mansueto argues, Plaintiff did not dispute any of the material facts asserted by Defendant Mansueto, and thus has admitted that, despite receiving a timely decision by Superintendent Lee and being advised of his appeal options, he failed to file an appeal to CORC. (*Id.*) Second, Defendant Mansueto argues that Plaintiff is incorrect in asserting that he was not required to appeal Superintendent Lee's decision to CORC. (*Id.*) More specifically, Defendant Mansueto argues that notice of the pendency of an investigation by the Office of Special Investigations ("OSI") did not satisfy Plaintiff's obligation to exhaust his administrative remedies because (a) there is no evidence that Superintendent Lee "initiate[d]" that investigation as required by Section 701.8 of the governing regulations (and indeed Plaintiff admits that the investigation had been initiated on June 10, 2016, due to a telephone complaint made by Plaintiff's mother, and that he knew of the investigation when he was interviewed by an OSI investigator on June 15, 2016), and (b) the OSI nonetheless eventually found that Plaintiff's allegations were unsubstantiated and he never appealed that unfavorable finding to CORC. (*Id.*)

## II.  RELEVANT LEGAL STANDARDS

### A.  Legal Standard Governing A Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[4]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[255]  (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to

---

[3]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[4]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

properly respond to the motion for summary judgment.).[5]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[6]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[7]–even where the non-movant was proceeding *pro se.*[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

---

[5]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[6]     *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

[7]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1(b).

[8]     *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[9]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.**     Legal Standards Governing PLRA Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516,524-25 (2002).  In this regard, exhaustion serves two main purposes.  First, it protects "administrative agency authority"

---

[9]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages the disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, DOCCS has made available a well-established inmate grievance program.  7 N.Y.C.R.R. § 701.7.  Generally, the DOCCS IGP involves the following three-step procedure for the filing of grievances.  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.

First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[10]  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.

---

[10]     The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.

Third, a grievant may appeal to the CORC within a certain number of days of receipt of the superintendent's written decision.  CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by correction officers or prison employees.  7 N.Y.C.R.R. § 701.8.  In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor.  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number and sent immediately to the superintendent for review.  Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint in one of three ways: (1) "in-house," (2) by the New York State Office of the Inspector General, or (3) by the New York State Police's Bureau of Criminal Investigation.  An appeal of the adverse decision of the superintendent may be taken to CORC as in the regular grievance procedure.  A similar special procedure is provided for claims of discrimination against an inmate.  7 N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards.  For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances.  If that application was denied, the inmate could file a complaint

complaining that the application was wrongfully denied.[11]  Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.[12]

It is important to note that, where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed, he need not appeal that unprocessed grievance, because the regulatory scheme advising him of that right is too opaque.  *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (finding that, "even if Williams technically could have appealed his [unprocesseed] grievance, we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016)]'").

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal.  *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry.  This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust

---

[11]     *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[12]     7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray*, 2010 WL 1235591, at *2 & n.4 [collecting cases]; *cf.* 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. [citations and internal quotations omitted].

However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong and effectively enveloped its second prong within its first prong. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross*, any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross*, 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id*. In particular, 42 U.S.C. § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. *Id*. In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is

required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Finally, two additional points bear mentioning regarding an exhaustion hearing (which is not prompted by Defendant Mansueto's motion but which is nonetheless relevant to the Court's analysis below). First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of proving that a prisoner has failed to exhaust his available administrative remedies.[13] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter"

---

[13]      *Id.* at *4 (citation omitted).

the defendant's assertion by persuading the Court of either exhaustion or unavailability.[14]   As a

result, practically speaking, while the burden of proving this affirmative defense remains at all

times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat

it.

## III.   ANALYSIS

After careful consideration of whether Defendant Mansueto has shown as a matter of law

that Plaintiff has failed to exhaust his available administrative remedies under the PRLA, the

Court answers this question in the negative for the reasons stated in Plaintiff's opposition

memorandum of law.   *See, supra*, Part I.C.2. of this Decision and Order.   To those reasons, the

Court adds the following analysis.

It is undisputed that Plaintiff failed to appeal the Superintendent's response to CORC.

What the parties dispute is whether Plaintiff was required to appeal the Superintendent's

response to CORC in light of the OSI investigation being conducted into the circumstances

underlying his grievance.   In Plaintiff's view, because the Superintendent advised him that his

allegations were "under review by the Department Office of Special Investigations" and that thus

the "[a]ction requested is granted" to that extent, there was nothing to appeal.   In Defendant

Mansueto's view, because Plaintiff clearly knew that the Superintendent had not "initiate[d]" the

OSI investigation for purposes of the governing regulations, the mere existence of the

investigation did not mean the Superintendent had awarded Plaintiff all of the relief available,

and Plaintiff was therefore able to appeal the Superintendent's decision (a finding further

---

[14]      *Id.* at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir.
2004) (noting that special circumstances must be "plausibly alleged, . . . justify[ing] the
prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-
CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that
although the burden of proof on this affirmative defense remains with the defendant at all times,
the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*,
2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

supported by the fact that the OSI's eventual finding was that Plaintiff's allegations were unsubstantiated).

As discussed above, under the expedited procedure in 7 N.Y.C.R.R. § 701.8, once the grievance is sent to the Superintendent, he shall promptly determine whether the allegations, if true, would state a "bona fide" case of harassment.  7 N.Y.C.R.R. § 701.8(c).  If he determines that they do not, then he shall return the grievance to the IGRC for normal processing."  *Id*.  If he determines that they do so, however, he shall do one of three things (and only three things): (1) "initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance; (2) request an investigation by the Inspector General's office; or (3) if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation."  7 N.Y.C.R.R. § 701.8(d).  Thus, the duty to initiate or request an investigation is mandatory where the Superintendent finds that the allegations, if true, would constitute a bona fide case of harassment.

Although the Superintendent did not explicitly state in his decision whether he found the allegations sufficient to state a bona fide case of harassment, his response was such that a reasonable fact finder could conclude that he had so found.  Notably, the Superintendent stated that Plaintiff's grievance was "granted" to the extent that an investigation by OSI (DOCCS' "in house" investigator) was already underway.  (Dkt. No. 35, Attach. 7, at 9.)  Moreover, he could have (despite the pendency of the OSI investigation) determined that the allegations did not constitute a bona fide case of harassment and sent Plaintiff's grievance to the IGRC for normal processing; however, he did not do so.

As to whether a reasonable fact finder could also conclude that the Superintendent "initiated" the OSI investigation, although Plaintiff had reason to know that the Superintendent

did not personally order the investigation (because he had been interviewed by an OSI investigator on June 15, 2016, six days before he filed his grievance), as stated above, the Superintendent's decision both referenced the investigation and expressly stated that Plaintiff's grievance had been "granted" to that extent.   As a result, a reasonable fact finder could conclude (albeit barely) that, between June 22, 2016, and July 7, 2016, the Superintendent had so endorsed the investigation that he could be found to have helped "initiate" it for purposes of the governing regulation.[15]   Indeed, regardless of whether the OSI investigation was pending before Plaintiff's formal grievance, there is nothing to suggest that the Superintendent would not have initiated an investigation on that grievance if one had not already been pending; as already discussed, the Superintendent's only options at this stage were to either order an investigation or refer the matter back to the IGRC, and it is undisputed that he did not refer the matter back to the IGRC. Upon such evidence, a reasonable fact finder could conclude that the Superintendent's

---

[15]     Such a conclusion would, as Plaintiff argues, mean that there was nothing for him to appeal because he had been victorious.  *See, e.g., Frasier v. McNeil*, 13-CV-8548, 2015 WL 1000047, at *7 (S.D.N.Y. March 5, 2015) (finding that, because "Ms. Frasier was notified by Superintendent Kaplan that her grievance had been referred to the Inspector General's Office for investigation . . . [a]t that stage, the inmate has obtained at least partial favorable relief, and . . . , where the inmate receives favorable relief there is no basis for an administrative appeal") (internal quotation marks and citations omitted); *Andrews v. Cuomo*, 04-CV-0566, 2010 WL 1142010, at *5 (S.D.N.Y. March 9, 2010) (finding that, because the superintendent had referred plaintiff's complaint to IGO for investigation, plaintiff had no reason to appeal favorable resolution of grievance to CORC); *Lawyer v. Gatto*, 03-CV-7577, 2007 WL 549440, at *8 (S.D.N.Y. Feb. 21, 2007) (finding that plaintiff did not need to appeal superintendent's failure to respond within required time frame because he was told that IGO was conducting investigation); *Hairston v. LaMarche*, 05-CV-6642, 2006 WL 2309592, at *9 (S.D.N.Y. Aug. 10, 2006) ("[When] the Superintendent has directed the complaint be investigated by the Inspector General's Office . . . the inmate has obtained at least partial favorable relief, and as the Second Circuit has held, where the inmate receives favorable relief there is no basis for administrative appeal.").  The Court notes that "an investigation [is] the only relief available from the superintendent under the IGP . . ." pursuant to § 701.8(d).  *Andrews*, 2010 WL 1142010, at *5 (internal quotation marks and citation omitted), *accord,* Lawyer, 2007 WL 549440, at *8 (explaining that, when an inmate utilizes the formal IGP, and his grievance is forwarded to the superintendent for expedited review, and the superintendent forwards the grievance to the IGO for investigation, the inmate has obtained "the only relief available from the superintendent under the IGP").

acquiescence to (and acceptance of) the pending OSI investigation was the functional equivalent of his ordering an investigation himself.

As to whether Plaintiff was required to appeal the outcome of the OSI investigation (which found Plaintiff's allegations unsubstantiated), 7 N.Y.C.R.R. § 701.8 does not state whether an inmate can or must appeal the unfavorable results of an investigation conducted as part of the expedited procedure, but rather only directs that the grievant may appeal to CORC where either the Superintendent fails to respond within the required time or where the inmate wishes to appeal the Superintendent's response. 7 N.Y.C.R.R. § 701.8(g), (h). The Second Circuit has found that appeal to CORC from an investigation by the *Inspector General's Office* is not required to exhaust one's administrative remedies, whether or not the investigation resulted from a referral by the Superintendent as part of a formal grievance. *Dabney v. Pegano*, 604 F. App'x 1, 3-4 (2d Cir. 2015).[16] Specifically, the Second Circuit explained as follows:

> The IGP did not require Plaintiff to appeal from an adverse report by the [IG] in order to properly exhaust his administrative remedies. A prisoner or superintendent may ask the IG to investigate a harassment grievance. But such an investigation is not a formal part of the IGP. . . . The IG's report does not bind DOCCS, and the IGP does not provide an avenue for prisoners to appeal IG reports that are adverse to their claims. As a result, prisoners, including Plaintiff, need not appeal from an IG's report to satisfy the PLRA's "proper exhaustion" requirement.

---

[16]     District courts have reached a similar conclusion. *See, e.g., Winfield v. Bishop*, 09-CV-1055, 2013 WL 4736378, at *6 (N.D.N.Y. Sept. 3, 2013) (Kahn, J.) ("Nothing in the record currently before the Court indicates . . . whether Plaintiff received a copy of any written report [of the inspector general's investigation], or whether Plaintiff was advised that he was required to appeal any decision the inspector general reached."); *Pagan v. Brown*, 08-CV-0724, 2009 WL 2009 WL 2581572, at *7 (N.D.N.Y. Aug. 19, 2009) (Kahn, J.) ("[O]nce the Inspector General's office decided that plaintiff's claims were unsubstantiated, plaintiff would have had no recourse to appeal this determination."); *Lawyer v. Gatto*, 03-CV-7577, 2007 WL 549440, at *8 (S.D.N.Y. Feb. 21, 2007) (finding that DOCCS' expedited grievance procedure "contain[s] no language advising Plaintiff that he must await the result of [the IGO's] report for his administrative remedies to be considered exhausted. Nor [does] this section state that in the event of an adverse report from the Inspector General an appeal to CORC was available.").

*Dabney*, 604 F. App'x, at 3-4.  However, unlike the Inspector General's Office, which is an external investigatory agency with jurisdiction over all agencies and departments of New York State, the OSI is DOCCS' own internal investigation unit.[17]  Defendants have not presented evidence or authority as to whether a report by the OSI (unlike a report by the Inspector General's Office) does or does not bind DOCCS due to OSI's nature as an internal investigatory unit.  Nor have Defendants presented evidence or authority as to whether the IGP provides an avenue for prisoners to appeal OSI reports that are adverse to their claims.  Under the logic of *Dabney*, if OSI reports are considered a formal part of the IGP and/or are binding (due to the internal nature of OSI within DOCCS), then an inmate might be required to appeal from the results of an OSI investigation.  However, without any such evidence or authority, it is unclear whether an inmate is required to appeal to CORC from an unfavorable OSI investigation that was referred by a Superintendent as part of the expedited grievance process.

As to any argument that Superintendent Lee's decision of July 7, 2016, was not complete (in that it had yet to be amended or supplemented in light of the OSI's Final Investigative Report of February 12, 2017), the Court must reject that argument at this point in time. Setting aside the fact that the governing regulation does not mention any such amended or supplemental decision by the Superintendent, such a construction of the regulation does not appear consistent with the short deadline for a decision by the Superintendent.  *See Hairston v. LaMarche*, 05-CV-6642, 2006 WL 2309592, at *10 (S.D.N.Y. Aug. 10, 2006) ("[T]he requirement in § 701.11[b])[5] that

---

[17]      *See Overview, DOCCS Office of Special Investigations*, https://doccs.ny.gov/doccs-office-special-investigations-osi (last visited July 15, 2021) (stating that the OSI conducts investigations and operations within the Department); *Office of the Inspector General*, https://ig.ny.gov/offices/inspectorgeneral (last visited July 15, 2021) (stating that the IG has jurisdiction over all executive branch agencies, departments, divisions, officers, boards, and commissions).  As it is found on official government websites, the Court may take judicial notice of this information.  *See Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 490 nn.2, 4, 6 (N.D.N.Y. 2020) (Kahn, J.) (indicating that the Court can take judicial notice of information and documents from official government websites).

the Superintendent render a decision within 12 working days of receipt of the grievance . . . does

not seem consistent with the time necessary for an Inspector General investigation . . . . If . . . the

Superintendent . . . is to render a decision after the Inspector General concludes its investigation,

and that triggers the inmate's obligation to appeal, the Superintendent here did not render any

decision after the October 5, 2004 Inspector General's report.").

   Additionally, even if a reasonable fact finder were to conclude that Plaintiff's failure to

appeal to CORC was a failure to exhaust his administrative remedies, there remains a question as

to whether the Superintendent's decision, or the regulation itself, would constitute grounds to

excuse that failure under *Ross v. Blake*.  As discussed above in Part II.B. of this Decision and

Order, an inmate is required to exhaust only remedies that are available.  *Ross*, 136 S. Ct. at

1858.  As applicable here, remedies are not available where "an administrative scheme might be

so opaque that it becomes, practically speaking, incapable of use," or where "prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation."  *Id*. at 1859-60.

   In this case, there is a question of whether the nature of the Superintendent's decision

thwarted Plaintiff's ability to take advantage of the grievance process due to misrepresentation.

Specifically, the Superintendent's use of the word "granted" in the context of that decision (even

if it specifies "only to the extent noted above") could reasonably be construed as favorable, such

that it misrepresented the nature of the decision and the need to appeal.  Additionally, given that

neither 7 N.Y.C.R.R. § 701.8 nor any other apparent relevant DOCCS regulation provides a clear

answer as to whether an inmate must appeal a Superintendent's decision that merely refers a

matter for investigation, or whether the inmate must appeal the conclusions of the investigation

itself, or whether the Superintendent is required to issue a follow-up decision accepting or

rejecting the findings of the investigation from which an inmate must appeal, there is also a concern that the portion of 7 N.Y.C.R.R. § 701.8 related to taking an appeal to CORC is sufficiently opaque as to be incapable of use. Indeed, a review of the case law in this area shows that courts are not quite sure when or even whether an inmate is required to appeal to CORC in such a situation. *Compare Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *10 (N.D.N.Y. Sept. 25, 2012) (concluding that "a harassment grievant must appeal to CORC even where the IG's finding of unsubstantiation follows a referral by a superintendent" because a mere referral for investigation is neither favorable nor unfavorable, and noting that the plaintiff had not filed an appeal either after the referral to the IG or after the conclusion of the IG's investigation) *with Harris v. Gunsett*, 12-CV-3578, 2013 WL 3816590, at *8 n.5 (S.D.N.Y. July 22, 2013) (finding that plaintiff had no obligation to appeal the superintendent's decision where the superintendent granted partial favorable relief because such favorable relief left no basis for an administrative appeal) *and Hairston*, 2006 WL 2309592, at *9-10 (expressing uncertainty as to whether the expedited hearing process requires the Superintendent to issue a decision after the conclusion of an investigation, and whether that subsequent decision would trigger the inmate's obligation to appeal).

For all of these reasons, the Court must deny Defendant Mansueto's request for a judgment as a matter of law on his exhaustion defense. This issue is more appropriate for a pre-trial exhaustion hearing. Granted, the fact finder of the issues at such a hearing will be the undersigned (who is also authoring this decision). *See, supra,* Part II.B. of this Decision and Order. However, those issues will be decided based only on a preponderance of the evidence (rather than a beyond-a-reasonable-dispute standard). The parties are respectfully advised that of particular interest to the Court at such a hearing (if the parties do not settle their dispute in the

interim) would be the outstanding factual and legal issues identified above in this Decision and Order, including, but not limited to, the following: (1) whether Superintendent Lee found the allegations sufficient to state a bona fide case of harassment, (2) what role (if any) Superintendent Lee played in the nascent OSI investigation between June 22, 2016, and July 7, 2016, (3) what Plaintiff interpreted Superintendent Lee's decision to mean, (4) whether a finding of substantiation by the OSI could bind DOCCS and/or permit a supplemental decision by the Superintendent, and (5) whether a finding of unsubstantiation by the OSI could permit a supplemental decision by the Superintendent and/or be appealed to CORC.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Mansueto's motion for summary judgment (Dkt. No. 35) is **DENIED**.

Dated: August 20, 2021
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge